# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

ROBERT H. AJAMIAN,

          Plaintiff,

 v.                 1:14-CV-306
                     (DNH/ATB)

MORGAN STANLEY SMITH
BARNEY, et al.,

         Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

ROBERT H. AJAMIAN
Plaintiff, pro se

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court a complaint filed on a form for civil rights actions pursuant to 42 U.S.C. § 1983, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Robert Ajamian. (Dkt. Nos. 1, 2).

### I.   <u>IFP Application</u>

When plaintiff first submitted his complaint, the IFP application was incomplete. On March 26, 2014, this court administratively closed this case, but gave plaintiff the opportunity to comply with the filing fee requirement or submit a properly completed IFP application. (Dkt. No. 3). Plaintiff has re-filed his motion to proceed IFP, and the Clerk has reopened the action for this court's review. (Dkt. No. 4 & Text Order of March 28, 2014).

A review of plaintiff's new IFP application shows that he has still failed to answer critical questions associated with his income. (Dkt. No. 4) (IFP Application, Question 3). In his first application, plaintiff indicated that he was not employed, but

when asked if he has received "Other Income" in the past twelve months, he left that section totally blank. (Dkt. No. 2, Question 3). He was required to answer either "Yes" or "No" to a question that asked whether he received income from a series of different sources of income. (*Id.*) In his new application, he has checked "No" for every source of income, making it impossible to determine how he is able to pay for food or shelter. (Dkt. No. 4, Question 3) Although plaintiff has now answered all of the questions on the form to a certain extent, some of his answers do not make sense.[1]

However, the court will not detail all the concerns it continues to have with plaintiff's application. Notwithstanding plaintiff's failure to properly complete the IFP application, the court will continue its analysis of the complaint, because even if plaintiff had properly completed the IFP application, the case would have to be dismissed. Thus, the court will proceed to a consideration of the merits and will grant IFP for purposes of filing only.

## II. Merits

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious;

---

[1] One of the questions asks whether plaintiff owns any automobile, real estate, stock, bond, security, trust, jewelry, or other financial instrument or thing of value held in someone else's name. (IFP Application, Question 5). Plaintiff originally left this question blank. Now he states that he only owns a car. Since this action is about a retirement account and stock owned by plaintiff, it is odd that there is no reference to any retirement account. The court also notes that in the IFP application, plaintiff states that his disabled brother depends upon plaintiff for support, but if plaintiff has no income, it is unclear how he is "supporting" his disabled brother.

(ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

### III. Jurisdiction

#### A. Legal Standards

Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agriculture, Inc. v. Perry*, No. 12 Civ. 6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust,* No. 09 Civ. 7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013) (citing *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012); *Henderson ex rel. Henderson v. Shinseki*, __ U.S. __, 131 S. Ct. 1197, 1202 (2011)). Federal courts are mandated to sua sponte examine their own jurisdiction at every stage of the litigation. *Id.*

When a plaintiff is pro se, the court must interpret the complaint liberally. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008). The court considers all possible grounds for relief that plaintiff could be raising. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

#### B. Application

Although plaintiff in this case has used the form for civil rights complaints under section 1983, and the body of the complaint only claims alleged violations of his "constitutional rights," the Civil Cover Sheet contains check marks on various boxes indicating that the action may be based on "Diversity" or "Other Fraud" in the "Torts" section of the form, as well as "Other Civil Rights," "Arbitration," and "Constitutionality of State Statutes." (Dkt. No. 1-1). Thus, the court will consider if

4

there are other possible bases for plaintiff's assertion of jurisdiction.[2]

### 1. Federal Question Jurisdiction

#### a. Section 1983

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States." 28 U.S. C. § 1331. Plaintiff has filed this case, using a form for civil rights actions under 42 U.S.C. § 1983. To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Private conduct is simply beyond the reach of section 1983 "'no matter how

---

[2] The Civil Cover Sheet also has a section entitled "Origin." Within this section plaintiff has checked a box stating that the action was "Transferred from Another District." (Dkt. No. 1-1). Where plaintiff is asked to "specify," it appears that he has listed the "Arbitration" case number. (*Id.*) Clearly, this case has not been transferred from another federal district court, and it is an original action.

discriminatory or wrongful" that conduct may be." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).  A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam).  The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

Plaintiff in this case claims that Morgan Stanley Smith Barney ("MSSB") and plaintiff's stock broker, Edward Dominquez, have violated plaintiff's "constitutional rights to [a] conservative safe Keough retirement account from 2000-2002." (Complaint ("Compl.") at ¶ 4) (Dkt. No. 1).  Plaintiff claims that on January 11, 2007, a mediation took place regarding this issue, but that the parties to the mediation were not "neutral." (*Id.*)  In his causes of action, plaintiff seems to claim that his "constitutional" rights to safe and conservative investments were violated because, instead of investing in Black Rock Mutual Funds, defendant Dominquez had a conflict of interest and promoted "Morgan Stanley" Brand A & B Funds that were "overpriced to make commissions for himself." (*Id.* ¶ 5) (Causes of Action).  Plaintiff's third cause of action[3] states that MSSB "manipulated" the January 11, 2007 mediation. (*Id.*)  Plaintiff states that he "declares [the] contract null and void," and that his constitutional rights were further violated because he was not allowed to properly present his case to a neutral panel. (*Id.*)

---

[3] Plaintiff's second cause of action lists only the "damages" that plaintiff identified ($42,000.00 that were "trebled" to $126,000.00). (Compl. ¶ 5, Second Cause of Action).

There is no allegation anywhere in the complaint that either of the named defendants were state actors or conspired with state actors to violate plaintiff's rights. Mr. Dominquez is clearly a private individual, and MSSB is a private investment company. There are no allegations that either defendant acted under color of state law in dealing with plaintiff. *See Baum v. Northern Dutchess Hospital*, 764 F. Supp. 2d 410, 419 (N.D.N.Y. 2011) (private conduct is generally beyond the reach of § 1983) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assn.*, 531 U.S. 288 (2001)); *Weinraub v. Glen Rauch Securities, Inc.*, 399 F. Supp. 2d 454, 463 (S.D.N.Y. 2005) (securities arbitrators do not act under color of state law for purposes of § 1983), *aff'd*, 180 F. App'x 233 (2d Cir. 2006). *See also Delahoussaye v. Physical Review Letters PRX Journal*, No. 13-CV-4603, 2013 WL 5744511, at *2 (E.D.N.Y. Oct. 23, 2013) (dismissing an action brought under § 1983 against a private company for lack of jurisdiction); *Maxineau v. City Auto Body of Valley Stream*, No. 13-CV-4093, 2013 WL 4520470, at *2 (E.D.N.Y. Aug. 2013) (same).

It appears that plaintiff is unhappy with the way that his money was invested by Mr. Dominquez and his employer MSSB. A private corporate entity such as MSSB is deemed a state actor "only if" the government created the entity by special law; the government retains permanent authority to appoint a majority of the directors of the corporation; or there is a close nexus between the State and the challenged action of the entity as though the action of the private company may be fairly treated as an action by the State itself. *Baum*, 764 F. Supp. 2d at 419 (citation omitted).

Very liberally interpreted, this case is similar to *Weinraub* case from the Southern

District of New York. In *Weinraub*, the plaintiff alleged that the stock broker defendants mismanaged his margin account and gave him faulty investment advise in violation of federal securities laws. 399 F. Supp. 2d at 461. Weinraub also named the arbitrators,[4] who he alleged improperly precluded evidence at his arbitration hearing. *Id.* at 463. Mr. Weinraub raised a variety of claims, and the court specifically held that neither the arbitrators, nor the National Association of Securities Dealers ("NASD")[5] acted under color of state law, dismissing any claims under section 1983. Thus, in this case, plaintiff's claims, to the extent that he is attempting to bring a section 1983 claim may be dismissed for lack of state action.[6]

### b. Securities Laws

In *Weinraub*, after noting that the plaintiff asserted "a plethora of federal and state-law claims," the court interpreted plaintiff's mismanagement claims as being brought under the Securities and Exchange Act ("SEA"). 399 F. Supp. 2d at 455, 461-62. Claims of securities fraud must meet the heightened pleading requirements in Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261, 271 (S.D.N.Y. 2012) (citing Fed.

---

[4] Plaintiff in this case has not named any arbitrators, and this would be another basis for dismissing any claims relating to any arbitration proceeding alleging that plaintiff was not allowed to present evidence of his claims.

[5] On July 26, 2007, the Securities and Exchange Commission approved the consolidation of the regulator functions of the New York Stock Exchange and the NASD into a single entity, known as FINRA. *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ. 318, 2009 WL 2242605, at *5 n.9 (S.D.N.Y. July 27, 2009) (citation omitted).

[6] The court would also note that it is unaware of any constitutional right to a conservative, safe, Keough Retirement Account.

R. Civ. P. 9(b); *ASTI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 89 (2d Cir. 2007); 15 U.S.C. § 78u-4(b)(1)). Section 10(b) of the SEA prohibits any person from using any manipulative or deceptive device or contrivance "in contravention of SEC rules." *Id.* (citing 15 U.S.C. § 78j(b); Rule 10b-5). To state a claim under section 10(b) and Rule 10b-5, the plaintiff must prove (1) a material misrepresentation or omission by defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance by plaintiff upon the misrepresentation; (5) economic loss; and (6) loss causation. *Id.* (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)); 17 C.F.R. § 240.10b-5. To plead scienter, the complaint must allege facts with particularity to show that the defendant had an opportunity to commit fraud or strong circumstantial evidence of conscious misbehavior or recklessness. *Alki Partners, LP v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 493-94 (S.D.N.Y. 2011) (citations omitted).

Plaintiff in this case claims that his stock broker sold him "overpriced" MSSB stocks instead of safe, "conservative" mutual funds for the sole purpose of getting his commission. Plaintiff states that the arbitration[7] was in 2007. However, he has attached to his complaint a dispute resolution claim that he apparently submitted to FINRA on September 19, 2013, alleging Breach of Fiduciary Duty; Manipulations; Misrepresentation/Non-Disclosures; Omission of Facts; Suitability; Unauthorized Trading; Breach of Contract; Failure to Supervise; and Negligence. (Compl. at CMECF p.7). These "allegations" merely appear in a list without any explanation, and it is

---

[7] Plaintiff refers to the arbitration as his "mediation."

9

unclear how a claim submitted in 2013 relates to his arbitration in 2007, in which he alleges that he was not allowed to present evidence to a "neutral panel." Thus, the court is stretching to determine any claims that plaintiff may be trying to make, further evidence that plaintiff has not alleged anything with "particularity."[8]

The court in *Weinraub* also dismissed the plaintiff's claim based on the statute of limitations. Weinraub claimed that the mismanagement took place in 2000. This plaintiff claims that the illegal conduct took place from 2000 to 2002, and that his "mediation" took place on January 11, 2007. The current[9] limitations period for a securities fraud claim is ***the earlier of*** two years from the discovery of facts underlying the violation or within five years of the violation. 28 U.S.C. § 1658(b) (repealing the former statute of limitations found within the SEA in 15 U.S.C. § 78i(e)). In *Weinraub*, the court applied the previous statute because the statute of limitations ran prior to the new law being enacted. 399 F. Supp. 2d at 462 n.66. The court stated that the "latest" that plaintiff could have discovered the pertinent facts was in June of 2002, when he began his arbitration proceeding. *Id.* at 462. Weinraub brought his federal action in 2005, long beyond either time limit, and the court found that Weinraub's securities

---

[8]There is a private right of action under the SEA, but it is very clear that when claiming misleading statements or omissions, the complaint must specify each statement alleged to be misleading, the reasons why it was misleading, and if the claim is based on "information and belief," the complaint must state specifically all facts upon which that belief is formed. 15 U.S.C. § 78u-4(b)(1).

[9] The previous statute of limitations was shorter, and required that the action be brought within one year of the discovery of facts necessary for the claim or within three years of the occurrence. 399 F. Supp. 2d at 462 n.66 (citing former 15 U.S.C. § 78i(e)). The previous statute was repealed by implication when the Public Accounting Reform and Investor Protection Act of 2002 ("Sarbanes-Oxley") was passed, which lengthened the statute of limitations to what it is today.

fraud claim was also barred by the statute of limitations.

In this case, plaintiff claims that the defendants' actions took place between 2000 and 2002, and he brought the arbitration proceeding in 2007. Thus, the court will give plaintiff the benefit of the newer statute of limitations. It has been held that the two year period is a statute of limitations, while the five-year time limit is known as a "statute of repose." *Marini v. Adamo*, No. 08-Cv-3995, 2014 WL 465036, at *19-20 (E.D.N.Y. Feb. 6, 2014). A statute of repose defines the right involved in terms of the time allowed to bring suit. *Id.* at *20 (citing *Stoltz Family P'ship L.P. v. Daum*, 355 F.2d 92, 102 (2d Cir. 2004)). Thus, a statute of repose begins to run "without interruption once the necessary triggering event has occurred even if equitable considerations would warrant tolling or even if plaintiff has not yet, or could not yet have, discovered that [he] has a cause of action." *Id.* (citing *Stoltz*, 355 F.3d at 102-103). In *Marini*, after analyzing what was "unsettled law," the court also held that the "continuing violations doctrine" does not apply to this statute of repose. *Id.* at *20-21. In *Stoltz*, the Second Circuit stated that a statute of repose does not "bar" a cause of action, rather, it prevents what might otherwise be a cause of action from ever arising. 355 F.3d at 103. *See also Police and Fire Retirement System of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106-107 (2d Cir. 2013) (discussing statutes of repose in securities litigation).

In this case, giving plaintiff all benefit of the doubt, he was certainly aware of his claims when he went through his "mediation" proceeding in 2007, but plaintiff alleges that the violation occurred between 2000 and 2002. (Compl. at 2). Five years from the

11

date of the violation would have been 2007. As stated above, the five years would have run regardless of whether plaintiff was even aware of the violation. Plaintiff filed this action on March 21, 2014, long after the statute of limitations and/or the statute of repose ran. According to the attachment to the complaint, plaintiff seems to have recently filed another request for arbitration in 2013. However, this would not revive a claim whose statute of limitations has already run. He makes claims relating to the 2007 arbitration (although he does not and cannot sue the arbitrators).[10] Although the statute of limitations is an affirmative defense, and must generally await a defense motion, dismissal is appropriate when the facts supporting the statute of limitations defense are set forth in the papers that plaintiff himself submitted. *Messeroux v. Maimonides Medical Center*, No. 11-CV-5343, 2013 WL 2414690, at *1 (E.D.N.Y. May 31, 2013) (citing *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)).

The court also notes that this is not the only case plaintiff has brought with respect to his alleged investments. He has two other civil actions in this district in

---

[10] The court in *Weinraub* stated that the arbitrators were not state actors for purposes of section 1983, and they would not be liable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, because the FAA does not create an independent basis for federal-question jurisdiction. 399 F. Supp. 2d at 463 & n.74. This court notes that the arbitrators were not involved in the securities transaction at issue, thus would not be liable under the SEA. The court in *Weinraub* also held that any supplemental state law claims against the arbitrators would be barred by the doctrine of "arbitral immunity." *Id.* at 464 & n.80 (citing, *inter alia*, *Austern v. Chicago Bd. of Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990)). Plaintiff also states that defendant Morgan Stanley "manipulated" the mediation. However, it is unclear how Morgan Stanley "manipulated" the mediation/arbitration, and it appears that plaintiff is simply unhappy with how the mediation was conducted.

which he claims that his money was improperly invested.[11] *See Ajamian v. Nimeh*, No. 1:14-CV-320 (GTS/CFH) (filed 3/24/14) (administratively closed for failure to properly complete the IFP application) and *Ajamian v. Zakarian*, No. 1:14-CV-321 (DNH/TWD) (filed 3/24/14).

IV. **Opportunity to Amend**

    A. **Legal Standard**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

    B. **Application**

In this case, the court finds that any attempt by plaintiff to amend his complaint would be futile. Plaintiff cannot bring a claim under section 1983 because neither defendant acted under color of state law. There is no way that plaintiff would be able to revive a claim from 2000 to 2002 or even from 2007 under the SEA, in which plaintiff alleges that his assets were mismanaged.[12] Thus, this court will recommend dismissing

---

[11] Plaintiff also has an unrelated civil action in which he has sued the entire Supreme Court Appellate Division, Third Department. *Ajamian v. State of New York*, No. 1:13-CV-1316 (MAD/TWD).

[12] The court would also note that the statute of limitations for section 1983 actions is the "general" statute for personal injury actions in the state in which the cause of action arose. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In New York, it is well settled that the applicable statute of limitations is three years under N.Y. C.P.L.R. § 214(5). *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). Thus, even if the defendants had acted under color of state law, and plaintiff had some sort of constitutional right, the statute of limitations would have run in this case, whether the cause of action accrued in 2002 or 2007.

13

plaintiff's action sua sponte with prejudice.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's renewed motion to proceed IFP (Dkt. No. 4) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that this action be **DISMISSED SUA SPONTE WITH PREJUDICE** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 6, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge